UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------X
MARVEL CHARACTERS, INC.,               :    Civil Action No.
                                       :    3:04MC242(SRU)
            Movant,                    :
                                       :
       - against -                     :
                                       :
WORLD WRESTLING ENTERTAINMENT,         :
INC.,                                  :
                                       :
            Respondent.                :
------------------------------------------------------------X

### MEMORANDUM IN SUPPORT OF PLAINTIFF MARVEL CHARACTERS, INC.'S MOTION TO COMPEL WORLD WRESTLING ENTERTAINMENT TO PRODUCE DOCUMENTS

Marvel Characters, Inc. ("Marvel") submits this memorandum in support of its motion pursuant to Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure to compel World Wrestling Entertainment, Inc. ("WWE") to produce documents responsive to a subpoena (the "Subpoena") served on WWE to obtain discovery relevant to <u>Marvel Characters, Inc. v. Terry Bollea</u>, Civil Action No. 03 CV 8995(BSJ) (FM), pending in the United States District Court for the Southern District of New York (the "Action").*

### Preliminary Statement

WWE and the defendant in the Action, professional wrestler Terry Bollea ("Bollea"), have been co-licensees for several years of Marvel's HULK HOGAN mark "and any variances or derivatives thereof consented to by Marvel," including without limitation

---

* The motion is supported by the accompanying Declaration of Rose Auslander, dated April 29, 2004 ("Auslander Decl.").
1230503.2

HULKAMANIA and HULKSTER (collectively the "HULK HOGAN Marks"). Auslander Decl. ¶4.

Marvel's claims in the Action seek remedies for (1) Bollea's refusal to pay any royalties to Marvel under the license, (2) his ongoing infringement due to his continued use of Marvel's marks HULK, HULK HOGAN and variations thereof, such as HULKAMANIA, HULKSTER, HOLLYWOOD HOGAN and HOLLYWOOD HULK HOGAN (collectively the "HULK Marks") and (3) his additional breaches of that license by his assertion of ownership and registration rights to HOLLYWOOD HOGAN and HULK HOGAN. Id. ¶8, Exh. 2.

Bollea has taken the position that he does not have the documents necessary to determine the royalties at issue, and that WWE has them—forcing Marvel to subpoena WWE for those documents. Auslander Decl. ¶¶9, 10.

WWE, in turn, has refused to produce complete documentation in response to the following requests in the Subpoena:

- documents sufficient to show gross reportable income in connection with licensed goods and services
- documents sufficient to identify all activities subject to royalty payments
- documents relied on in calculating royalties
- agreements between WWE and Bollea concerning the HULK Marks
- agreements and other communications between WWE and its predecessor(s) in interest concerning the HULK Marks
- documents concerning any assessment of the financial value or goodwill associated with the HULK Marks

All of these documents are highly relevant to the issues of the royalties owed to Marvel and to Bollea's defenses in the Action, which deny Marvel's rights in, and the value of, the HULK Marks.

It is by now abundantly clear that neither Bollea nor WWE has any incentive to produce documents to Marvel, because such documents would likely show that additional royalties are in fact owed to Marvel under the Agreement. Each points fingers at the other: Bollea says that it is WWE, not he, which has responsive documents. WWE -- Marvel's own licensee, and the primary party exploiting the license -- has refused to produce anything but the most limited information.

## Background

### 1. The Action Pending in the Southern District of New York

The background of the Action is as follows: In the early 1980s, Bollea misappropriated the names HULK and HULK HOGAN, seeking to identify himself with Marvel's HULK character. To avoid litigation over that infringement, in 1985, Bollea and his then wrestling promoter, Titan Sports, Inc. ("Titan"), a predecessor to WWE, entered into a long-term license agreement with a predecessor in interest of Marvel, The Marvel Comics Group, a division of Cadence Industries Corp. ("the Agreement"). Auslander Decl. ¶3.

Under the Agreement, Bollea and Titan recognized Marvel Comics' exclusive rights to the HULK mark, and received a license to certain restricted use of the HULK HOGAN Marks. In turn, they agreed, among other things, to pay royalties and not to assert any rights in the HULK HOGAN Marks or variations thereof. Auslander Decl. ¶4.

Marvel's records show that it had received royalties from WWE's predecessors in interest, although those payments do not appear to be complete, and they and Bollea had acknowledged the Agreement in updated supplements. Once WWE succeeded to the Agreement, however, all payments stopped completely, so that the last payment to Marvel was by a WWE predecessor on June 26, 2000. Id. ¶5.

1230503.2                                  3

2.  **Settlement Discussions**

Marvel attempted to resolve this matter amicably with Bollea, but was unable to do so. Settlement discussions between WWE and Marvel began after April 8, 2003, when Eli Bard, Senior Litigation Attorney at Marvel, sent a letter to Edward L. Kaufman, Esq., Senior Vice President and General Counsel at WWE, providing notice that Bollea and WWE were to cease and desist use of the HULK Marks and to account for all revenues generated by them in connection with those marks. In response, on July 16, 2003, WWE sent Marvel a small royalty payment for the time period from January 2002 through June 2003. Messrs. Bard and Kaufman then exchanged correspondence for the next several months in an attempt to resolve disputes about the amount of royalties paid. Auslander Decl. ¶6.

On February 18, 2004, the day after service of the Subpoena on WWE, Mr. Kaufman wrote to Mr. Bard for continued settlement purposes, admitting that WWE had previously made a "miscalculation of royalties due to Marvel." Mr. Kaufman enclosed: (1) documents, not previously disclosed, showing sizeable additional WWE royalties owed to Marvel, and (2) a check to Marvel for substantial additional royalties owed by WWE—in fact, three times the sum that WWE had provided to Marvel in the entire 10 months of previous correspondence addressing this issue. Id. ¶7.

WWE made no payments to Marvel for royalties dating before January 2002. In his letter, Mr. Kaufman took the position that the reason there were no such payments was that "during the period June 2000 through January 2002 referenced in your letter, the 'reportable gross' was in a negative position as a result of substantial returns of merchandise for which Mr. Bollea and Marvel previously were paid royalties." Id. ¶12(b). Counsel for WWE later

substituted the explanation that no royalties were reported to Marvel before January 1, 2002 because Mr. Bollea did not enter into a contract with WWE until after that date. Id. ¶12(f).

WWE has recently produced to Bollea documents that contradict both assertions—those documents in fact reflect payments by WWE and its predecessor World Wrestling Federation (WF) to Bollea before that January 1, 2002 date, covering a time period and activities for which Marvel has received no royalties and no accounting statements. Id. ¶14.

### 3. Bollea's Claim Not To Possess the Documents Sought from WWE

During the initial status conference in the Action, held on February 10, 2004, counsel for Bollea represented to the Court that Bollea did not have certain documents relating to royalties claimed by Marvel under the Agreement, that Bollea has performed as a professional wrestler for Titan's successor WWE (which is also a party to the Agreement), that he believed WWE had such documents, and that Bollea had been unable to obtain the documents from WWE. Based on those representations, and recognizing the urgency of gathering what were clearly responsive documents, Magistrate Judge Maas ordered that "to the extent that third-party subpoenas for records relating to royalties are required, they shall be served on or before February 17, 2004, and shall be made returnable on or before March 2, 2004." Auslander Decl. ¶9, Exh. 4.

Pursuant to the Scheduling Order, within three business days after the conference, Marvel and Bollea both served subpoenas on WWE. Auslander Decl. ¶10.

### 4. WWE's Refusal To Cooperate with the Subpoena

As detailed in the accompanying Declaration of Rose Auslander (id. ¶12), Marvel has made every good faith effort to resolve the issues covered by this motion with WWE's

1230503.2           5

counsel, including limiting the scope of the document requests, but WWE has refused to accommodate its concerns. Id.

## **Argument**

### I. THERE IS NO JUSTIFICATION FOR WWE'S REFUSAL TO PRODUCE DOCUMENTS

There is no justification for WWE's failure to produce documents responsive to Marvel's document requests. The Federal Rules of Civil Procedure permit a wide ambit of discovery:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . . The information sought need not be admissible at trial if the information sought appears reasonably calculated to lead the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). For discovery purposes, the term "relevance" is broadly and liberally construed. Hickman v. Taylor, 329 U.S. 495 (1947); accord Herbert v. Lando, 441 U.S. 153 (1979).

The documents Marvel seeks are necessary to determine the royalty amounts at issue in the Action and are relevant to Bollea's defense that Marvel owns no rights to the HULK Marks. Nevertheless, WWE has interposed numerous objections to the discovery requested by Marvel, based primarily on scope and relevancy. In correspondence with WWE, Marvel has its requests to cover royalties only over the past six years (dating from the filing of the Action on November 10, 2003) and, where possible, to seek only "documents sufficient to show" the information sought. As discussed in more detail below, there can be no doubt that all documents sought by this motion are of core relevance to the Action and should be produced. See Pfizer, Inc. v. Mylan Laboratories, Inc. et. al., 2003 U.S. Dist. LEXIS 24806 (S.D.N.Y. 2003); Keywell Corp. v. Piper & Marbury, L.L.P., 1997 U.S. Dist. LEXIS 15859 (S.D.N.Y. 1997).

## II. MARVEL IS ENTITLED TO THE DISCOVERY WITHHELD BY WWE

### A. Gross Income in Connection with Licensed Goods/Services

Request No. 1: As limited by Marvel's February 26, 2004 letter ("Limited"), this request seeks "Documents sufficient to show the reportable gross income associated with the use of the HULK Marks." Auslander Decl. ¶12(e), Exh. 7.

Before sending the Subpoena, Marvel had virtually no such information. After receiving Mr. Kaufman's February 18 letter, sent the day after the Subpoena was served, Marvel has incomplete information—there are no reports of royalties owed to Marvel for the period before January 1, 2002, even though documents WWE has produced to Bollea show a steady stream of royalty payments by WWE and its predecessor WF to Bollea before that date—and Marvel has no backup documents for the summary information provided by Mr. Kaufman. Auslander Decl. ¶14.

In his February 18 letter, Mr. Kaufman told Marvel that "during the period June 2000 through January 2002 . . . the 'reportable gross' was in a negative position as a result of substantial returns of merchandise for which Mr. Bollea and Marvel previously were paid royalties." Marvel is entitled to production of the documents relied upon in making this statement, as: (1) Bollea in fact received royalties from WWE during that time period and Marvel is not aware of any royalty overpayments, much less overpayments that could be relied on to justify the payment of no royalties at all to Marvel for that time period (assuming arguendo that the parties had agreed to deductions for returns) (see Auslander Decl. ¶14); and (2) if WWE has documentation sufficient to show reportable gross income relating to wrestling appearances and merchandising in connection with the HULK Marks before January 1, 2002, it should be produced.

1230503.2

7

**B.     Documents Sufficient to Identify
        all Activities Subject to Royalties**

Request No 2: As Limited, this request seeks "Documents sufficient to identify all performances and merchandise sold in connection with the use of the HULK Marks." Auslander Decl. ¶12(e), Exh. 7.

WWE has provided some documentation, but refuses either to certify that the records produced to date are complete, or provide any additional documents in response to this request.

**C.     Documents Relied upon
        in Calculating Royalties**

Request Nos. 7-11: As Limited, these requests seek "Documents relied upon in calculating licensing royalties payments made or scheduled to be made in connection with the HULK Marks." Auslander Decl. ¶12(e), Exh. 7.

Request No. 12: As Limited, this request seeks "Documents sufficient to substantiate the amount of licensing royalties owed to Terry Bollea and/or Marvel for the HULK Marks." Auslander Decl. ¶12(e), Exh. 7.

WWE has refused to provide any such back up documentation. However, the need for such discovery is real—as noted above (pp. 4-5), the day after receiving Marvel's Subpoena, WWE itself paid Marvel three times the royalties it had previously admitted to owe, and has provided documentation of payments to Bollea covering a time period for which it previously claimed to owe no such royalties. Without the additional discovery sought by the Subpoena, it is impossible for Marvel to know whether the limited documentation WWE has produced to Bollea is now complete.

Marvel is entitled to financial documentation evidencing whether the royalty summaries offered by WWE to date are accurate and completely reflect all revenues due during the six-year statutory period. Marvel should not be forced to rely on WWE's untested claim that it has finally provided complete information.

1230503.2                                8

### D. Documentation of Relevant Agreements

Request No. 5 calls for agreements between WWE and Bollea concerning the HULK Marks.

Request No. 13 calls for agreements and other communications between WWE and its predecessor(s) in interest concerning the HULK Marks.

WWE has taken the position that no royalties were owed for certain periods of time, as allegedly it was not under contract to sell goods or services under the HULK Marks during those time periods. Auslander Decl. ¶12(f). The agreements sought by these requests are clearly relevant and necessary, both to test the truth of these statements and to determine the activities covered by those agreements.

### E. Documentation of the Value of the HULK Marks

In the Answer filed by Bollea in the Action, he asserts that it was the intent of the parties to the Agreement that—although the written Agreement is silent on this point— at the end of the Agreement's term, the HULK Marks would be given to Bollea and his heirs, free of any additional consideration. Documents concerning any assessment of the financial value or goodwill associated with the HULK Mark is obviously relevant to the credibility of this claim. Again, WWE cannot continue to refuse to produce such documents.

### Conclusion

In light of the foregoing, Marvel Characters, Inc. respectfully requests that the Court grant its motion to compel World Wrestling Entertainment, Inc. to produce responsive documents, grant Marvel Characters, Inc. attorney fees and costs incurred in connection with this matter, and award such other and additional relief as the Court deems just or appropriate.

Dated: May 3, 2004

                        KOO LARRABEE LAU-KEE & LANE LLP

                        By: _____
                              Glenn Lau-Kee (ct25727)

                        106 Corporate Park Drive, Suite 110
                        White Plains, New York 10022-7519
                        Telephone: (914) 251-0001
                        Facsimile: (914) 251-0969
                        Connecticut Address:
                        Glenn Lau-Kee, Esq.
                        5 Rose Lane
                        Westport, Connecticut 06880

                        Rose Auslander (ct25432)*
                        CARTER LEDYARD & MILBURN LLP
                        Two Wall Street
                        New York, New York
                        Telephone: (212) 732-3200

                        *Attorneys for Plaintiff*
                        *Marvel Characters, Inc.*

                        *Papers may be served on New York counsel.